UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JADA FARLER,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:10-cv-657

Spiegel, J.
Bowman, M.J.

**REPORT AND RECCOMENDATION**

Plaintiff Jada Farler filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error. (Doc. 8). Pursuant to local practice, this case has been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. §636(b). As explained below, I conclude that Plaintiff has demonstrated "good cause" and that her additional evidence is both new and material. As a result, a REMAND of this matter the Social Security Administration is warranted under sentence six of 42 U.S.C. §405(g).

**I. Summary of Administrative Record**

On December 13, 2006, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of June 15, 2006, due to a motor vehicle accident which resulted in her left hand and right ankle being crushed. (Doc. 6-5 at 2-6, Doc. 6-6 at 7). She was 25 years old at the time of her alleged disability. (Doc. 6-2 at 20, Doc. 6-6 at 2). After Plaintiff's claims were denied initially and upon reconsideration,

(Doc. 6-3 at 2-3, Doc. 6-4 at 2-14), she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Doc. 6-4 at 15-17). On August 18, 2009, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Doc. 6-2 at 22-60). At the hearing, ALJ Deborah Smith ("ALJ Smith") heard testimony from Plaintiff and from William T. Cody, an impartial vocational expert.

On October 22, 2009, ALJ Smith entered her decision denying Plaintiff's SSI application. (Doc. 6-2 at 12-21). The Appeals Council denied her request for review. (Doc. 6-2 at 2-4). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since December 13, 2006, the application date (20 CFR 416.971 let seq.*).*

2. The claimant has the following severe impairments: orthopedic impairments due to a severe motor vehicle accident, obesity, depression, borderline intellectual functioning, posttraumatic stress disorder and anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

……………………

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited in her ability to push or pull in the lower extremities, and limited to occasional climbing of ladder/rope/scaffolds, kneeling, crouching or crawling, and to frequent handling and fingering with her left upper extremity. Moreover, the claimant is able to complete simple, repetitive tasks, interact with others and work in an environment where there are no strict time constraints or production quotas. The claimant would be unable to attend or concentrate

    for 8 hours to a task that allowed no variability in work pace.  The claimant would be able to handle routine instructions and criticism.

    ……………………

5. The claimant has no past relevant work (20 CFR 416.965).

    ……………………

6. The claimant was born on March 11, 1981 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

    ……………………

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

    ……………………

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

    ……………………

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR Part 416.969 and 416.969(a)).

    ……………………

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 13, 2006, the date the application was filed and continuing through the date of this decision (20 CFR 416.920(g)).

    ……………………

(Doc. 6-2 at 14-21).  Thus, ALJ Smith concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI.

  On appeal to this court, Plaintiff maintains that ALJ Smith erred: 1) by not holding the record open for submission of additional material evidence which was relevant to

Plaintiff's allegations of continuing disability and meeting of a Medical Listing requiring a sentence six remand; 2) by failing to find that Plaintiff meets or equals Medical Listing 1.06; and 3) in not accepting the treating physician's opinions as to her functional limitations.

## II. Analysis

### A. Applicable Law

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's denial of benefits. Substantial evidence is "such relevant evidence as a reasonable mind might except as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Matthews,* 574 F.2d 359 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

4

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. §1382(a); 20 C.F.R. §416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. §416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R §416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the

5

Commissioner to show that there is work in the national economy which the individual can perform.  *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider the individual's impairments in light of the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. §404.1525(a).  If the individual suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience.  20 C.F.R. §404.1520(d); *Kirk,* 667 F.2d at 528.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.  *Born v. Secretary of Health and Human Servs.* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971).  Once plaintiff establishes a prime facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.  *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980).  To rebut a prima facie case, the

6

Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prime facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson,* 735 F.2d at 964 (per curiam) (emphasis in original); *O'Banner,* 587 F.2d at 323. When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born,* 923 F.2d at 1174; *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a vocation expert's testimony to a hypothetical

7

question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations. *Early v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky,* 35 F.3d at 1036. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms of their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the

8

claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.* In this case, Plaintiff alleges that the five identified errors at the fourth, fifth, and sixth steps of the sequential analysis require this Court to reverse the Commissioner's decision.

### B. Sentence Six Remand

Under sentence six of 42 U.S.C. § 405(g), this Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The provision "was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (citations omitted). A sentence six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Plaintiff, the party seeking a sentence six remand in the present case, bears the burden of establishing these two remand requirements. *See Hollon ex rel. Hollon v.*

*Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).  To be "material," new evidence (1) must be relevant to and probative of an applicant's condition prior to the Commissioner's decision, and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered.  *Smith v. Comm'r of Soc. Sec.*, No. 1:07cv199, 2008 WL 2311561, at *6 (S.D. Ohio June 4, 2008)(Barrett, J.)(citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).  New evidence is cumulative and not sufficient to warrant remand if it relates to an issue already fully considered by the Commissioner.  *Id.*  (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).  Additionally, evidence that a Plaintiff's health has deteriorated since the Commissioner's decision is not material to that application, and the appropriate remedy is to file a new application.  *Id.*  (citing *Sizemore*, 865 F.2d at 712).

Regarding "good cause," the Sixth Circuit "has taken a harder line" than some other circuit courts.  *Oliver*, 804 F.2d at 966.  In order to establish good cause in this Circuit, a plaintiff "must give a valid reason for his failure to obtain evidence prior to the hearing" for inclusion in the administrative record.  *Id.*  (citing *Willis*, 727 F.2d at 554).  "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act."  *Powell v. Comm'r of Soc. Sec.*, No. 3:07cv074, 2008 WL 886134, at *9 (S.D. Ohio March 28, 2008) (Rice, J.) (citing *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458 [table], 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) ["The test . . . is that good cause is shown for remand if the new evidence arises from

continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."]).

Plaintiff contends that a sentence six remand is warranted due to the new and material treatment record of her treating orthopedic surgeon, Dr. Archdeacon, which was received the same day the ALJ issued her decision.  (Doc. 8 at 2-4).

The Commissioner opposes a sentence six remand because ALJ Smith's refusal to hold the record open for Dr. Archdeacon's report does not constitute grounds for remand.  (Doc. 9 at 16).  The Commissioner also contends that an ALJ is not required to hold a record open for an unreasonable amount of time because the ALJ is obligated to issue decisions within a reasonable period of time after the hearing.  Observing that the report is time relevant, the Commissioner denies that the evidence is "material" to that decision.  (Doc. 9 at 17).

> On October 22, 2009, Dr. Archdeacon, reported that:
>
> It's been 2 ½ -3 years since I've seen her for her R pilon fracture. She's having a fair amount of pain, stiffness, and difficulty walking on the R side.
>
> PE: She has a grossly antalgic gait on the R side with a shortened stance phase. She has a stiff ankle. It does not reach neutral alignment. It's about 5° negative neutral alignment. She plantar flexes about 30°. She has a stiff subtalar joint. Midfoot and forefoot are reasonably supple. Neurovascular exam RLE - EHL, tibialis anterior and gastroc soleus complex are intact. The light touch is intact dorsal, plantar, in the first web space, and palpable pulses in the dorsalis pedis and posterior tibia with cap refill brisk in all digits. Her skin graft and medial traumatic wounds have all fully healed.
>
> RADIOGRAPHS: AP, lateral, and mortise radiographs of the ankle demonstrate that she appears to have collapsed into varus. I believe that she's consolidated. It's possible she has a nonunion, and it looks like some of her hardware has cut into her ankle joint. It's hard for me to tell. The joint itself does look preserved at this point.
>
> ASSESSMENT AND PLAN: I explained to Jada that at this point we have

> 3 options. We could continue to just leave things alone; we could do hardware removal, osteotomy, and repair of a nonunion with autogenous bone graft from the proximal tibia; or we could do an attempted ankle arthrodesis. She'd like to try a bone graft and osteotomy. I think this is reasonable. I told her I'd like her to stop smoking for a month. She's going to see me back in a month. If things are going okay at that point, we'll make a surgical plan. She understands and agrees.

(Doc. 6-8 at 92).

Although this evidence was submitted to the Appeals Council, it may be considered by the Court if the "good cause" standard is met. *See Cotton v. Shalala*, 2 F.3d 692 (6th Cir. 1993); *see also Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). For the reasons set forth below, the Court finds that Plaintiff has established "good cause" for failing to file the additional evidence prior to the administrative decision. It is undisputed that the evidence was not available until after the administrative decision in October 2009. Plaintiff's counsel informed the ALJ during the administrative hearing on August 18, 2009, that Plaintiff was scheduled for an EMG and then a follow-up with Dr. Archdeacon. (Doc. 6-2 at 34). The hearing transcript reveals that the ALJ requested these records and agreed to hold the record open, "All right. Counsel, I want a copy of that. I'm going to hold the record open, if you see Dr. Archdeacon and the EMG." (*Id.*).

Plaintiff's counsel later informed the ALJ on September 11, 2009, that the EMG was performed on August 25, 2009, that the test results had been requested and that Plaintiff was scheduled to see Dr. Archdeacon on October 22, 2009. Plaintiff's counsel requested the record be held open for approximately 60 days or until November 11, 2009 to submit those records. (Doc. 6-8 at 76). On September 14, 2009, Plaintiff's counsel received a call from ALJ Smith's office requesting that Counsel submit the EMG results. Plaintiff's counsel advised that the EMG results would be submitted upon

receipt. (Doc. 6-6 at 77). On September 29, 2009, the EMG results were submitted and Plaintiff's counsel again requested the record be held open for the office visit with Dr. Archdeacon on October 22, 2009. (Doc. 6-8 at 77). While the Commissioner argues that an ALJ is not required to hold a record open for an unreasonable amount of time, the fact remains that Plaintiff sought the evidence prior to the decision but was unable to do so because it simply did not exist.

Turning to materiality, Plaintiff's additional evidence must: (1) be relevant and probative of her condition prior to the ALJ's decision, and (2) establish a reasonable probability that the ALJ would have reached a different decision if he had considered the evidence. *See Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hollon*, 447 F.3d at 488. Dr. Archdeacon's report tends to support Plaintiff's subjective complaints about her daily struggles due to her orthopedic impairments in her left hand and right leg, and therefore is probative of her credibility, if not also her disability status. Defendant's contentions notwithstanding, such evidence clearly is material to the Listing 1.02, 1.03 and 1.06 issue before the ALJ and the substance of Plaintiff's assigned error regarding that issue.

Further, Dr. Archdeacon, an orthopedic surgeon, is a specialist in orthopedic disorders and treatment. Thus, there is a reasonable probability that the ALJ would have reached a different decision had she considered this evidence.

Accordingly, we find that Plaintiff has demonstrated "good cause" and find that the additional evidence is both new and material. As a result, a remand of this matter to the Social Security Administration is warranted under sentence six of 42 U.S.C. §405(g). In light of this decision, the Court makes no ruling on Plaintiff's remaining

substantive challenges to the ALJ's decision.  *See Melkonyan,* 501 U.S. at 98; see *Raitport v. Callahan*, 183 F.3d 101, 103-04 (2nd Cir. I999)(sentence-six remand involves no substantive ruling on the correctness of an administrative decision).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1.  The decision of the Commissioner to deny Plaintiff's SSI benefits be **REVERSED** and **REMANDED** under sentence six of 42 U.S.C. §405(g);

2.  On remand, the ALJ be instructed to re-evaluate Plaintiff's claim in light of Dr. Archdeacon's treatment record.

3.  While the Commissioner is considering the new and material evidence on remand, this case is **ADMINISTRATIVELY CLOSED**.  However, this Court retains jurisdiction over this action such that should Plaintiff be dissatisfied with the new decision of the Commissioner on remand, Plaintiff may petition the Court for entry of an Order reinstating the case on the active docket for judicial review of the new decision. Plaintiff must file said petition within 30 days of the date of the Commissioner's new decision.  Should both sides be satisfied with the Commissioner's new decision following remand, the prevailing party shall, within 30 days of the Commissioner's decision, petition the Court for entry of a Final Order adopting and ratifying the new decision.

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JADA FARLER,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:10-cv-657

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).